UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| WELLS FARGO BANK,<br>NATIONAL ASSOCIATION, | )<br>)<br>) | Case No. 1:12-cv-1333 |
| Plaintiff, | )<br>) | HONORABLE PAUL L. MALONEY |
| v. | )<br>) | |
| MELISSA S. STAMP, THOMAS STAMP,<br>BACKROADS LAND COMPANY,<br>SOUTHSTAR FARMS, L.L.C., STEVE<br>MOSER, JOHN DOE I – JOHN DOE X, | )<br>)<br>)<br>) | |
| Defendants. | )<br>) | |

## TEMPORARY RESTRAINING ORDER

This matter comes before the Court on the Motion for Temporary Restraining Order filed by the plaintiff, Wells Fargo Bank, National Association ("Wells Fargo"). Other than the notice provided to counsel for Melissa S. Stamp, Wells Fargo has moved the Court to enter the temporary restraining order without any further prior notice as to the defendants, Melissa S. Stamp, Thomas Stamp, Backroads Land Company, Southstar Farms, L.L.C., Steve Moser, and John Doe I – John Doe X (the "Defendants"). Wells Fargo has further certified, in writing, the reasons that it should not be required to provide any advance notice of its request for a temporary restraining order. The Court, having considered the motion, the brief, and the facts set forth in the Verified Complaint[1], now finds that the evidence sets forth specific facts that show that immediate and irreparable injury, loss, or damage will likely result to Wells Fargo before the Defendants can be heard in opposition to the motion.

---

[1] Unless otherwise stated, all capitalized terms in this order shall have the same definition as those set forth in the Verified Complaint.

In support of the elements for a Temporary Restraining Order, Wells Fargo has asserted in its verified complaint, and supported either by the verification or through the attached exhibits, the following:

1. Pursuant to the Loan Documents, including a certain Collateral Agreement and Pledge Agreement (along with the requisite filed financing statements), Wells Fargo possesses a valid and perfected security interest in certain collateral securing loans to Stamp Farms, L.L.C. and Northstar Farms, L.L.C. (the "Borrowers") in the aggregate original principal sum of $68 million.

2. The Wells Fargo Collateral includes, but is not limited to, all of the Credit Parties' accounts, money, deposit accounts, money on deposit in deposit accounts, inventory, equipment, farm products and fixtures, and all proceeds and accessions with respect to the foregoing collateral.

3. The Loans and other obligations of the Borrowers under the Credit Agreement and the other Loan Documents (as defined in the Credit Agreement), among other obligations, are guaranteed by Michael Stamp and Melissa Stamp (collectively, the "Individual Guarantors") pursuant to a Guaranty Agreement dated December 22, 2011 by the Individual Guarantors in favor of Wells Fargo.

4. On or about December 22, 2011, the Individual Guarantors executed a Pledge Agreement in favor of Wells Fargo granting a security interest to Wells Fargo in all of their right, title and interest in and to, among other things, the equity interests owned by the Individual Guarantors in the Credit Parties and all personal property of the Individual Guarantors if used in connection with the business operations of the Credit Parties

5. Accordingly, the Wells Fargo Collateral includes, without limitation, all of the Individual Guarantors' right, title, and interest in and to the equity interests of the Individual

Guarantors in the Credit Parties and all personal property of the Individual Guarantors used in connection with the business operations of the Credit Parties.

    6. At the time that Wells Fargo made the Loans to the Borrowers, Michael Stamp, as sole member of each of the Borrowers, over-represented the amount and value of Borrowers' collateral and the scope of Stamp Farms' farming operation to inflate the principal amount of the loan the Borrowers could obtain from Wells Fargo.

    7. Following execution of the Loan Documents, multiple events of default have occurred and are continuing, which have been acknowledged by the Borrowers. Additionally, the Defendants have participated in a scheme to access, dissipate, transfer, assign, sell, or otherwise deplete the Wells Fargo Collateral, which has been used to generate cash and pay down creditors of certain Borrower-related companies.

    8. Specifically, on November 1 or November 2, 2012, more than $500,000 worth of Stamp Farms' grain was sold to a major customer under the name of defendant Southstar Farms, L.L.C. ("Southstar") in an effort to liquidate a portion of the Wells Fargo Collateral and direct the proceeds elsewhere. Further, cash advances of approximately $700,000 were made to Southstar in 2012 so that Michael Stamp and/or Thomas Stamp could use the proceeds to make certain improvements to Southstar.

    9. Certain advances and transfers of Wells Fargo Collateral, including proceeds thereof, were also made to defendant Backroads Land Company ("Backroads"), an entity owned by Michael Stamp and his family. This collateral was then sold and the proceeds used to pay down non-Wells Fargo debt of the recipient, Backroads.

10. Several other entities believed to be owned or controlled by the Stamps, including Eaststar Farms and Weststar Farms, accepted Wells Fargo Collateral in knowing violation of the Loan Documents.

11. The Borrowers diverted more than $4 million from Borrowers' accounts, which constituted Wells Fargo Collateral, and used the funds to purchase real property. The real property was not purchased under the name of the Borrowers; rather, the purchased property was titled in the name of various third parties and subsequently sold. The proceeds from these subsequent sales were not remitted to the Borrowers but were retained by the third parties in violation of the Loan Documents.

12. Stamp Farms harvested grain earlier than usual this year, incurred additional processing costs to do so, and sold the grain and used the proceeds to pay off obligations owing to creditors of the Recipient Defendants or other entities related to the Credit Parties. Such grain and proceeds from the sale thereof constitute Wells Fargo's collateral.

13. Additionally, Michael Stamp or Stamp Farms possessed at least two pulling tractors valued at approximately $500,000, which tractors were used for promotional purposes on behalf of Stamp Farms. These pulling tractors operated as collateral under the Loan Documents, but are no longer in possession of the Borrowers and their location is unknown.

14. Following the discovery of the collateral transfers and breaches of the Loan Documents by the Credit Parties and the Individual Guarantors, Wells Fargo attempted to exercise certain of its rights under Section 7.13 of the Credit Agreement to inspect, audit, and make extracts from the books, records, and files of the Credit Parties, including but not limited to the electronic data systems and computer records of Stamp Farms.

15. The Defendants have engaged in a pattern of activity to deny Wells Fargo access to those records.

16. Mr. Moser, Information Technology Director for the Borrowers, and the brother-in-law of Michael Stamp, refused to provide the computer passwords and authorizations necessary for Wells Fargo to access these systems and records. The Borrowers' e-mail systems are hosted by internet provider GoDaddy.com. Steve Moser maintains an account with GoDaddy.com and the Stamp Farms' e-mail was administered on this account until recently. In order for Wells Fargo to access Stamp Farms' e-mail archives and backups (as it is entitled to do pursuant to Section 7.13 of the Credit Agreement), Wells Fargo needs the account/customer number for Moser's GoDaddy.com account because GoDaddy.com requires the account information from the time the account was created, which is Moser's GoDaddy.com account. Wells Fargo also needs the four digit pin code used to authorize access to or make changes to the account, or the last six digits of the credit card currently on file for the account. In violation of the Credit Agreement, Mr. Moser refuses to provide the necessary passcodes and access information. Mr. Moser also refuses to provide the passcode to the company-owned computer he utilized during his employment with the Borrowers.

17. Wells Fargo believes that the Defendants, and other Borrower-related entities (including Eaststar, Weststar, and the yet to be identified John Does) maintain possession, custody, or control of certain Wells Fargo Collateral and have been parties to its concealment, conversion, or misappropriation by transfer of the same to the Defendants and yet unknown related individuals and entities.

18. Despite Wells Fargo's request for assembly, delivery, and surrender of the Credit Party Collateral and the Individual Guarantor Collateral, the Credit Parties and the Individual Guarantors have refused to deliver and surrender the collateral to Wells Fargo.

19. Consequently, such collateral and its proceeds remain at immediate risk for loss and diversion.

IT IS THEREFORE ORDERED that the Defendants, along with their officers, agents, servants, employees, attorneys, and all other persons in active concert or participation with them (the "Bound Parties") are HEREBY ENJOINED in the following manner:

1. Preventing the Bound Parties from accessing, dissipating, transferring, assigning, selling or otherwise depleting the Wells Fargo Collateral;

2. Requiring the Bound Parties to deposit the proceeds of the Wells Fargo Collateral received by any of the Defendants into the registry fund of the United States District Court for the Western District of Michigan, to be placed in an interest bearing account;

3. Preventing the Bound Parties from removing, deleting, or otherwise destroying any of the business records of any of the Defendants or the Credit Parties, including but not limited to any records related to the transfer, concealment, assignment, sale, or other depletion of the Wells Fargo Collateral;

4. Requiring Steve Moser to provide to Wells Fargo all of the computer passwords and authorizations necessary for Wells Fargo to gain access to all of the electronic systems of any and all of the Credit Parties, including their e-mail backups and company owned computers, which includes without limitation providing (a) the account/customer number for Steve Moser's GoDaddy.com account from the time the account was created, (b) the four digit pin code used to authorize access to or make changes to the account, (c) the last six digits of the

credit card currently on file for the account, and (d) the passcode for the company-owned computer Mr. Moser utilized during his employment with the Borrowers.

      IT IS FURTHER ORDERED that the Defendants shall appear before the Court on December 18, 2012 at 9:00 a.m. to show cause, if there be any, why the temporary restraining order should not be converted to a preliminary injunction.

      IT IS FURTHER ORDERED that Wells Fargo shall not be required to post security as the Defendants will not be harmed or damaged by their temporary inability to withhold or transfer Wells Fargo's collateral or prevent Wells Fargo from accessing records it has a contractual right to access.

```
     IT IS FURTHER ORDERED that Plaintiff shall serve defendants
with a copy of this order, along with a copy of the summons,
complaint, motion, and supporting documents, and file a proof of
service regarding same.  The proof of service shall be filed no
later than close of business Tuesday, December 11, 2012.
     IT IS FURTHER ORDERED that Defendants shall file a written
response to plaintiff's motion by 12:00 p.m. (noon) on Friday,
December 14, 2012.
```

      **IT IS SO ORDERED**.

```
 Date:  December 7, 2012              /s/   Paul L. Maloney
        11:40 a.m.                  Chief United States District Judge
```